*E-Filed 6/25/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNIDAD DE FE Y AMOR CORPORATION,<br><br>　　　　Plaintiff,<br>　v.<br>IGLESIA JESUCRISTO ES MI REFUGIO,<br>INC., et al,<br><br>　　　　Defendants.<br>_____/ | NO. C 08-4910 RS<br><br>**ORDER GRANTING IN PART<br>AND DENYING IN PART<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT** |

## I. INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff Unidad de Fe y Amor Corporation ("Unidad"), a California nonprofit entity, moves for partial summary judgment on its claims for constructive trust (claim two) and rescission (claim three). Unidad additionally seeks summary judgment against the counterclaims for breach of contract and declaratory relief brought by defendants Iglesia JesuCristo es Mi Refugio, Inc. ("Iglesia"), Pastor Roberto Gomez, Hispanic Christian Community Network, Inc. ("HCCN"), and Antonio Cesar Guel (collectively "defendants").

The alternative contract theories being advanced by Unidad complicate adjudication of the pending motion. Simultaneously, at this point in the litigation, Unidad contends both that a contract never existed and that a validly formed contract was terminated pursuant to its terms. In light of that

1

somewhat muddled record and the hearing held on June 3, 2009, the motion for partial summary judgment will be granted in part and denied in part, as set forth below.

## II.  BACKGROUND

The undisputed facts reflect the following: On June 7, 2007, HCCN entered into an asset purchase agreement ("APA") with Central Coast Good News Inc. ("Central") to purchase four low-power television stations. Plaintiff's Mtn., Ex. 7. A few days later, on June 11, 2007, HCCN entered into an agreement with Iglesia that assigned its right to purchase the stations to Iglesia. *Id.*, Ex. 10. Shortly thereafter, Unidad entered into negotiations with Iglesia and HCCN to acquire two of the four television stations, both located in California, that Iglesia had just acquired the rights to purchase. *Id.*, Ex. 1 ¶ 2-3.

On June 13, 2007, the principal of Unidad, plaintiff Pastor Alejandro F. Musumeci, met with Gomez, representing Iglesia, in Dallas, Texas, to discuss Unidad's purchase of the stations. *Id.*, ¶ 3. On that same day, the parties executed a written letter of intent ("LOI") declaring that Unidad would purchase the two stations for $1,500,000. *Id.*, Ex. 2. Paragraph three of the LOI indicates that it is a non-binding expression of the interests and intentions of Unidad, Iglesia, and HCCN. *Id.*, ¶ 3. At the same time, however, the LOI contains a termination provision through which either party could terminate the relationship if an APA for the sale and purchase of the stations was not entered into within sixty days of the date of the LOI. *Id.* Paragraph nine further contains an integration clause stating that the LOI represents the entire understanding and agreement between the parties.[1] *Id.*, ¶ 9. After Musumeci signed the LOI, and pursuant to its terms, Unidad made a down payment of $50,000 ($30,000 to Iglesia and $20,000 to HCCN). *Id.*, Ex. 6.

On July 27, 2007, at a second meeting in Dallas, the parties signed "Amendment A" that reduced the purchase price of the two stations to $1,000,000 in return for an accelerated payment plan. *Id.*, Ex. 1 ¶ 7. Pursuant to the amended LOI, Unidad made a payment of $70,000 in July 2007

---

[1] The Court notes that paragraph seven contains a choice-of-law provision providing that the LOI and any subsequent APA are to be governed by Texas law. *Id.*, ¶ 7. At the hearing, the parties acknowledged that at this juncture, the Court need not determine whether California or Texas law applies as there is no appreciable difference between them for these purposes and to select one or the other would not be outcome determinative.

2

and a series of payments totaling $75,000 by the end of September 2007. *Id*., Exs. 3, 6. The parties additionally agreed that Unidad would make twelve monthly payments of $6,000 and eventually $8,000 until the purchase price was paid in full. *Id.*, Ex. 3. The amendment made no other changes to the original LOI. *Id*. Indeed, Unidad made fifteen payments under the amended LOI to HCCN and Iglesia, totaling $238,500. *Id*., Ex. 6. Unidad's last payment took place in May 2008. *Id*., Ex. 1 ¶ 12. Previously, in September 2007, Musumeci visited one of the stations and discovered that it was in need of repairs. *Id*., ¶¶ 10-11. Unidad made the necessary repairs and installed and paid for a new transmitter. *Id*., ¶ 10.

In May 2008, Gomez proposed "Amendment B" to modify further the terms of the amended LOI. *Id*., Ex. 4. The proposed amendment sought to reduce the purchase price to the amounts already paid plus one final lump sum of $307,000.[2] *Id*. Unidad never signed the proposed amendment. In addition and for the first time, Gomez proposed a draft APA.[3] *Id*., Ex. 11. Once he received the draft, Musumeci elected not to sign it and instead retained an attorney. *Id*., Ex. 1 ¶ 12.

On June 20, 2008, Unidad informed HCCN and Iglesia that the amended LOI was terminated. *Id*. Several months later, Unidad filed a complaint alleging common law fraud and unfair business practices pursuant to California Business & Professions Code § 17200. Unidad also sought to have a constructive trust imposed on the $238,500 it had paid as well as rescision of the amended LOI. In opposition, defendants filed counterclaims for breach of contract and declaratory relief.

### III.  LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson*

---

[2]  $307,000 was the amount that HCCN still owed Central to complete its acquisition of the stations. *Id*., Ex. 1 ¶ 12.

[3]  The parties dispute when discussions about the APA began. According to Unidad, during a third Dallas meeting in early October 2007, Musumeci expressed his desire to execute the APA that was first discussed in the original LOI, but Gomez indicated that such an agreement would not be necessary as the transfer of title would take place once Central was paid the amount owed pursuant to the agreement with HCCN. *Id*., Ex. 1 ¶ 8. Defendants, on the other hand, claim that Unidad never requested a draft APA.

3

1 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The purpose of summary judgment "is to
2 isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317,
3 323-24 (1986). The moving party bears the initial burden of informing the Court of the basis for the
4 motion, and identifying portions of the pleadings, depositions, answers to interrogatories,
5 admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Id.* at
6 323.

7 If the moving party meets its initial burden, it then shifts to the non-moving party to present
8 specific facts showing that there is a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e);
9 *Celotex*, 477 U.S. at 324. The evidence and all reasonable inferences therefrom must be viewed in
10 the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*
11 *Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). The opposing party "must do more than simply show
12 that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*
13 *Radio*, 475 U.S. 574, 588 (1986). Summary judgment is not appropriate if the non-moving party
14 presents evidence from which a reasonable jury could resolve the disputed issue of material fact in
15 his or her favor. *Anderson*, 477 U.S. at 248; *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir.
16 1991). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find
17 for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. DISCUSSION

19 Unidad advances two arguments in support of summary judgment both as to its claims for
20 constructive trust and rescission, and against defendants' counterclaims for breach of contract and
21 declaratory relief: (1) that the LOI did not constitute a valid contract, and (2) that the LOI was a
22 valid contract which Unidad properly terminated according to its terms. These alternative theories
23 have different implications for purposes of the pending summary judgment motion as discussed in
24 turn below.

25 A.   Termination

26 Unidad's argument on reply focuses on the theory that a valid contract existed and was
27 terminated pursuant to its terms. A contract is terminable at will when it may be terminated without
28 constituting breach and without any need to show cause for termination. *Maksym v. Loesch*, 937

4

1 F.2d 1237, 1245 (7th Cir. 1991). The LOI constitutes a contract terminable at will, per paragraph
2 three, which provides that the LOI "may be terminated by either party, upon written notice to the
3 other party, if the APA has not been executed within sixty days from the date of Seller's acceptance
4 of this letter." Plaintiff's Mtn., Ex. 2 ¶ 3. Assuming a valid enforceable contract came into existence
5 here, the record reflects that the LOI did indeed terminate as a result of Unidad's June 20, 2008
6 activation of the clause, as undisputedly, no APA had been entered into before the sixty day deadline
7 expired.

That, however, does not end the inquiry. The termination of the contract does not automatically trigger the grant of a constructive trust nor is it consistent with a claim for rescission. Moreover, the amended LOI is silent as to what should happen upon termination to monies paid up to that point.

A constructive trust is an equitable remedy that a court may impose when a party holding property would be unjustly enriched if permitted to keep it. *In re Bradley*, 501 F.3d 421, 432 (5th Cir. 2007); *see Sampson v. Bruder*, 47 Cal.App.2d 431, 435 (1941) (imposing a constructive trust to prevent unjust enrichment). The imposition of a constructive trust is appropriate if Unidad establishes: (1) that defendants committed actual or constructive fraud through breach of a preexisting fiduciary or confidential relationship; (2) that defendants would be unjustly enriched by retaining the proceeds of that wrong; and (3) the existence of a traceable res upon which to impose the trust.[4] *Bradley*, 501 F.3d at 432. While Unidad argues that the installments paid to defendants were wrongfully obtained, at this juncture, imposition of a constructive trust is not appropriate because Unidad has failed to demonstrate as a matter of undisputed fact actual or constructive fraud.

Rescission is an equitable remedy and operates to "set aside a contract that is legally valid

---

[4] While many courts require some form of fraud or breach of duty to impose a constructive trust, it may also be imposed in any case where there is a wrongful detention of property to which another is entitled. *David Welch Co. v. Erskine & Tulley*, 203 Cal.App.3d 884, 894 (1988); *see Martin v. Kehl,* 145 Cal.App.3d 228, 237 (1983) (imposing a constructive trust for the purposes of preventing unjust enrichment where the property was bought with plaintiff's money, but title was in defendant's name); *see also Texas Co. v. Miller*, 165 F.2d 111, 116 (5th Cir. 1947) (implementing a constructive trust where a person obtained money not equitably belonging to him, regardless of whether the money came into his possession by accident, mistake, or fraud).

5

but is marred by fraud, mistake, or for some other reason, the court must set it aside to avoid unjust enrichment." *Humphrey v. Camelot Ret. Cmty.*, 893 S.W.2d 55, 59 (1994); *see Alder v. Drudis*, 30 Cal.2d 372, 383 (1947) (stating that the "right of rescission and restitution generally exists as an alternative remedy to an action for damages where there has been repudiation or a material breach of a contract"). Unidad's claim for rescission does not fit with its theory that an otherwise valid contract was properly terminated pursuant to its terms. Accordingly, to the extent that Unidad relies on its termination theory, summary judgment does not follow as to either the constructive trust or rescission claims in the complaint.

B. <u>Absence of a Valid Contract</u>

As an alternative theory, Unidad argues that the LOI does not represent a valid and enforceable contract. To the extent that Unidad relies on this theory, to obtain summary judgment it would need to demonstrate that the undisputed facts reflect that no contract ever came into force and effect. Defendants insist that Unidad has not presented evidence demonstrating the absence of any issues of material fact on the contractual validity of the LOI. For example, Unidad argues that the LOI is not a contract because it contains a provision stating that it is a non-binding representation of the parties interests and intentions. *See* Plaintiff's Mtn., Ex. 2 ¶ 3. Defendants counter that Unidad's actions demonstrated an intent to be bound by the LOI because Unidad made fifteen payments pursuant its terms and repaired one of the transmitter sites contemplated by the agreement at its own expense, thereby reflecting an understanding that a contract was in place.

Beyond advancing those facts, defendants make the alternative argument that under Federal Rule of Civil Procedure 56(f), at the very least, the deposition of Unidad's Alejandro Musumeci is essential to determine the intent of the parties on that question. To the extent that Unidad relies on a "no contract" theory, it has not presented sufficient evidence at this juncture to warrant such a finding on summary judgment. Similarly, the claim for rescission, which contemplates the formation of a contract in the first instance, is inapposite to such a theory of relief. Accordingly, the motion for summary judgment on that basis must be denied.

C. <u>Defendants' Counterclaims</u>

Unidad also moves for summary judgment on defendants' first counterclaim for breach of contract and defendants' second counterclaim for declaratory relief. As to the first counterclaim, Unidad's motion is well taken. Regardless of whether the LOI represents a valid contract or not, the outcome is that defendants' counterclaim is without support. In the event that the otherwise binding LOI was terminated, Unidad's payments ceased only after that date so no contractual breach would arise as a result. *See Larsen v. Johannes*, 7 Cal.App.3d 491, 502 (1970) (finding no basis for an action for damages caused by breach of a contract that has been validly terminated pursuant to its terms). Should Unidad ultimately prevail on its alternative "no contract" theory, defendants' breach of contract claim would by definition be legally untenable. Either way, therefore, summary judgment is warranted on defendants' first counterclaim.

Defendants' counterclaim for declaratory relief, on the other hand, is interwoven with the issue of whether or not a valid contract was formed in the first instance. This is an issue of disputed fact as noted above and it would be premature therefore to grant summary judgment on that question.

## IV. CONCLUSION

For the reasons set forth above, Unidad's motion for partial summary judgment is granted in part and denied in part, as follows:

(1) Unidad's motion for summary judgment on its claim for constructive trust is denied.

(2) Unidad's motion for summary judgment on its claim for rescission is denied.

(3) Unidad's motion for summary judgment on defendants' first counterclaim for breach of contract is granted.

(4) Unidad's motion for summary judgment on defendants' second counterclaim for declaratory relief is denied.

IT IS SO ORDERED.

Dated: 6/25/2009

RICHARD SEEBORG
United States Magistrate Judge